THE STATE OF DELAWARE, for the use of Warner Company, a corporation of the State of Delaware, *v.* MASSA-CHUSETTS BONDING AND INSURANCE COMPANY, a corporation of the State of Massachusetts.

*(October* 9, 1939.)

RODNEY and SPEAKMAN, J. J., sitting.

*Marvel, Morford* and *Logan* for plaintiff.

*Stewart Lynch* for defendant.

Superior Court for New Castle County, No. 74, March Term, 1939.

RODNEY, J., delivering the opinion of the Court:

While the plaintiff has contended that the check for $23,958.52 was not received by it under binding circum-

stances and has brought suit for the full amount of $25,-219.49, yet we think the present controversy should not include the amount of the check. The check was received by the plaintiff and deposited to a special account entirely in the name of the plaintiff, and as to which account the plaintiff had exclusive control. The identification of the account was purely for the plaintiff's purposes. We shall therefore consider the suit as merely for the sum of $1,-260.97, being the difference between the original amount of $25,219.49 and the payment of $23,958.52 and said amount constituting the claimed deduction of 5% on the original sum.

In the determination of this case we are confronted with a most difficult question and one which has been the source of much judicial thought, viz: Whether a check sent by a debtor for a smaller amount than claimed by the creditor and stipulating that it shall be considered "in full" of the claim, and which check is cashed by the creditor who denies that it is received "in full" settlement, can be the basis of an accord and satisfaction in a subsequent suit by the creditor suing for the claimed balance?

At at early date it was determined that a payment and parol acceptance of a part of a liquidated debt already due could not operate as a discharge of the entire debt for the reason that as the debtor had paid but a part of his admitted indebtedness, and therefore suffered no detriment, and the creditor had received no more than he was entitled to and therefore had acquired no benefit, that no consideration would exist for the discharge of the balance. The rule seems to have had its origin in a *dictum* in *Pinnel's Case*, 5 *Co. Rep.* 117*a*, 77 *Eng. Rep.* 237, 1 *Eng. Rul. Cas.* 368, and while freely criticized has been adopted in almost all jurisdictions except where it has been affected by statutory enactment. We shall have further occasion to discuss the foregoing rule.

■ Where, however, the claim is unliquidated in character or in dispute the Courts have uniformly held that the retention and use of a remittance by check purporting to be in full of an account or accompanied by a letter to that effect, amount to an accord and satisfaction of the larger claim of the creditor. The payment of the unliquidated claim or the settlement of the dispute constitute the consideration. Almost all of the cases are collected in notes in 34 *A. L. R.* 1036 and 75 *A. L. R.* 905. This rule is recognized and approved in *Ashland Coal & Coke Co. v. Old Ben Coal Corporation,* 7 *W. W. Harr.* (37 *Del.*) 571, 187 *A.* 596.

■ The important preliminary question then, in the present case is to determine whether the claim of the plaintiff be liquidated or unliquidated in character, and this is generally a question of fact. The claim of the plaintiff, as shown by the statement of facts, arises from a written contract. This contract fixed the unit price of concrete and the gross claim of the plaintiff is admittedly correct. The contention of the defendant arises from his claim for a deduction from the gross bill. This of course brings us to a consideration of the terms of payment.

The terms of payment as provided by the written contract were

"On approved credit, terms are thirty days net cash or 5% discount for cash paid on or before the 15th of each month, for all invoices for the preceding month, providing all previous invoices are paid."

It is not claimed that payments were made before the 15th of the various months. The defendant offered to show by evidence that the Sales Manager of the plaintiff had stated at the time the written contract was entered into "that D. E. O'Connell and Son had never lost a discount", and also to show that under previous and different contracts O'Connell had received the discount even though payment was not made prior to the 15th of the month. The

testimony was rejected as tending to vary the terms of a written contract.

The question then presents itself whether under the given facts the claim of the plaintiff is liquidated on the one hand or unliquidated or subject to a bona fide dispute on the other, for as we have seen, the division of the authorities is on this precise question.

Professor Williston says (1 *Williston on Contracts, Rev. Ed.,* § 128) :

"An unliquidated claim is cne, the amount of which has not been fixed by agreement or can not be exactly determined by the application of rules of arithmetic or of law."

A liquidated claim, we assume, is the opposite. Now no law has fixed the amount of the present plaintiff's claim and it cannot be definitely ascertained by the rules of arithmetic for, while the multiplier may exist in the unit price of the concrete as fixed by the written contract, yet the multiplicand or number of units must be furnished by extraneous evidence.

The gross claim of the plaintiff, however, is concededly correct and agreed to, and indeed the deductions which the defendant seeks to establish are themselves, in a sense, liquidated as being merely the mathematical computation of five per cent of the gross bill.

We cannot view the claim of the plaintiff, even considered in the sense of the net amount due from O'Connell to the plaintiff, as unliquidated, as that term is properly understood. But many authorities make the doctrine of accord and satisfaction equally available when there is an honest dispute of the claim, and a disputed claim may be liquidated or unliquidated. 1 *Williston,* § 128.

We must therefore see whether the claim of the plaintiff was subject to a bona fide dispute on the part of

O'Connell so as to invoke the doctrine of accord and satisfaction. The dispute must be an honest, genuine, or bona fide dispute advanced in good faith and resting on a substantial basis (*Detroit Belt Lacer Co. v. Fowler*, (*Tex. Civ. App.*) 4 *S. W.* 2d 651) or founded on some reasonably tenable or plausible ground. *Sawyer v. Somers Lumber Co.*, 86 *Mont.* 169, 282 *P.* 852. The dispute need not be in fact established or based upon a solid foundation, but there must be some justification therefor and not a mere arbitrary refusal to pay.

■■ The dispute in the present case is based upon the terms of payment. The terms of payment are expressly set out in the written contract and provide that discounts are only allowable on payments made before the 15th of the following month. The defendant attempted by parol evidence to show the allowance of discounts on prior and different contracts where the payments had not been made before the 15th. The relevancy of the testimony was not apparent and it was excluded as tending to vary the terms of a valid subsisting written contract.

It is difficult to see how there can be a genuine, bona fide dispute concerning terms of payment when the terms are set out in a written agreement, plain and unambiguous in every respect. The matter is somewhat similar to a note for one year for $1000 bearing interest at 6%. At the expiration of one year the sum of $1060 would be due. It is difficult to see how a genuine, bona fide dispute can arise so as to contend that the interest should be 3% because in some other previous note such abatement had been made. We therefore must hold there was no substantial or tenable basis for the dispute.

We are thus remanded to the original, common law rule, viz.:

"that a payment and parol acceptance of a part of a due and liquidated debt does not operate as a discharge of the entire debt."

We have but little sympathy with the rule and regret the necessity of following it. To us the opportunity for parties to settle their own disputes is of prime importance. There is something incongruous in a rule which allows a balance of an account to be discharged by a part payment where the part payment is made the day before the debt falls due; or that the balance is discharged by the delivery of any collateral article of any kind or value, or by the acceptance of any ostensible additional security which may in fact add nothing of value, and yet a parol agreement to accept $950.00 in cash in full of a due and liquidated claim of $1000 has no validity. The rule ignores the well known fact that money has a definite value with relation to time and that often to preserve credit the payment of an amount on one day may be worth several times the amount at a later period. The Rule has been severely criticized in almost every jurisdiction and is probably followed only because of the difficulty of overturning it on any clear principle so long as the law of consideration retains its present vigor. (See *Lord Wright "Ought the doctrine of consideration be abolished from the Common Law", 49 Harvard L. Rev.* 1225.)

The Rule, however, has existed in some form since *Pinnell's Case* in 1602, and is established as part of the common law and is almost uniformly followed where the common law is recognized. It has been adopted as the law of England (*Foakes v. Beer*, [1884] 9 *A. C.* 605) and has been followed by the Supreme Court of the United States and in every American Jurisdiction except New Hampshire and Mississippi. *Frye v. Hubbell*, 74 *N. H.* 358, 68 *A.* 325, 17*L. R. A.* (*N. S.*) 1197; *Clayton v. Clark*, 74 *Miss.* 499, 21 *So.* 565, 22 *So.* 189, 37 *L. R. A.* 771, 60 *Am. St. Rep.* 521.

The authorities are so numerous that mere references must be sufficient. See 1 *Am. Jur.* 236; 1 *C. J. S., Accord and Satisfaction,* § 29, *p.* 498; 17 *Cornell L. Rev.* 659; 17

*Harvard L. Rev.* 459; 78 *U.* of *P. L. Rev.* 549; 23 *Minn. L. Rev.* 223; 37 *Mich. L. Rev.* 800; 25 *Va. L. Rev.* 488, and a note on *Rule* in *Pinnells Case,* 13 *Va. L. Rev.* 380.

We are aware that in most of the cases sustaining the *Rule* the matter was not dealt with directly but the result was arrived at by the very sinister method of creating exceptions to the *Rule* and thus, by proving exceptions, the *Rule* itself has been established. Indeed, many cases have expressly indicated a policy of deliberately holding a claim as unliquidated so as to avoid the *Rule* which could not be directly denied. Since we reluctantly feel compelled to recognize the *Rule* we are not inclined to avoid it by strained and specious reasoning and at the expense of intellectual integrity. Some ten jurisdictions have statutes governing the matter (1 *Williston* on *Contracts,* § 120, *p.* 419; 37 *Mich. L. Rev.* 801), and this would seem preferable since the statutes could enact only the desired change, and the value of the law of consideration in original agreements would not be jeopardized.

There then remains but the passing mention of the principle involved in the question as to what effect the payment of a conceded part of a claim has upon the balance or disputed part. As to this question the authorities are in conflict. It seems illogical to attempt a distinction between the payment of part of a claim, the whole of which is conceded, and the payment of the conceded amount where only the balance is in dispute. Many authorities, in their attempt to limit the common law rule, hold that in the latter case the accord and satisfaction exists. The theory of the decisions is that the claim is a unit and an unliquidated or disputed part makes the whole claim unliquidated or in dispute. The cases are collected in copious notes in 4 *A. L. R.* 474; 53 *A. L. R.* 768; 11 *L. R. A.* (*N. S.*) 1022.

We shall not pause to discuss the question because we

feel the principle can only apply when there is a bona fide or genuine dispute as to the balance. In the present case we have found no such dispute and the question cannot arise.

There are many authorities upon the question of the acceptance by a creditor of a remittance by check purporting to be in full for the claim, or accompanied by indications of the debtor's intention that it be so regarded. Many of the cases may be found in notes to 34 *A. L. R.* 1035 and 75 *A. L. R.* 905. Upon close analysis it will be found that all these cases have application only where the claim is unliquidated or there exists a bona fide or genuine dispute, for otherwise the original rule could not exist.

Finally, there are also cases which hold that where the claim is liquidated the receipt by the creditor of a promissory note of the debtor alone, covering part of the claim, constitutes consideration for the abatement of the balance. The theory of these cases is that payment being made in a medium different from the cash due on the debt the rule of the delivery of a chattel in payment will be applied and the Court will not inquire into the value of the chattel. The cases on the subject are by no means uniform and are collected in 1 *Williston on Contracts, Rev. Ed.*, § 124; 62 *A. L. R.* 751; 1 *C. J. S., Accord* and *Satisfaction*, § 31, *p.* 510; 1 *Am. Jur., p.* 245.

In a few instances like *Goddard v. O'Brien*, 9 *Q. B. Div.* 37 and *American Seeding Machine Co. v. Baker*, 55 *Ind. App.* 625, 104 *N. E.* 524, the holding has been extended to checks of the debtor alone upon the theory that a check is but an inland bill of exchange payable on demand. The foregoing is not the prevailing American view (see the cases in the foregoing citations) and, indeed, it is difficult to see how the unsecured note or check agreeing to pay cash at a future time can add any new consideration to an obliga-

tion already due to pay cash at the present. The case of *Moss v. Goldstein*, 254 *Mass*. 334, 150 *N. E*. 91 is strongly analogous to the instant case upon both facts and law.

From a thorough review of the facts and the law we are of the opinion that judgment must be entered for the plaintiff in the sum of $1,336.62, being the sum of $1,260.97 with interest from October 1, 1938.

We should have preferred to have reached a conclusion whereby parties would have an untrammeled method of settling accounts free from the question of consideration. This is especially true when the debtor makes the payment with the express stipulation that it shall be "in full" of the account. The acceptance of the check and rejection of the stipulation seems almost to approach conversion and it would seem that it should prevent the creditor from receiving the benefit and rejecting the detriment attached to the payment. Where the claim is liquidated, however, this objection may not apply for one cannot be estopped by accepting that to which he is clearly entitled.