La–Z–Boy CHAIR COMPANY,
Plaintiff,

v.

Paul D. HINDS, Defendant.

Civ. A. No. 73–572.

United States District Court,
D. South Carolina,
Columbia Division.

Heard Oct. 4, 1973.

Decided Oct. 8, 1973.

J. Wesley Drawdy, Drawdy, Faucette & Ryan, P. A., Columbia, S. C., for plaintiff.

Michael W. Tighe, Callison, Tighe & Nauful, Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, insisting that no genuine issue of fact exists as a matter of law. The original complaint alleges the sale of merchandise to defendant in the amount of Fifty Thousand Seventy-Eight and 39/100 ($50,078.39) Dollars; attached to the complaint is a statement of account. The answer of the defendant alleges that he returned ninety (90) chairs and the acceptance by the plaintiff of these ninety (90) chairs, previously shipped to the defendant by the plaintiff, was in accord and satisfaction of the debt. Defendant's answer further alleges valuable consideration by virtue of the depletion of defendant's stock in trade below operational levels, as a result of the return of the chairs, and that defendant's business was closed.[1]

In response to discovery defendant admitted that prior to the commencement of the delivery of the ninety (90) chairs

---

1. In the deposition of defendant taken July 31, 1973, Hinds stated he did business as Hinds Furniture Co. (p. 4 Tr.) from February of 1972 until May of 1973. The answer states he returned the chairs between February 9 and February 28, 1973. In May of 1973 he sold his building for $84,500 on a Friday, and the building burned on Sunday (p. 5 Tr.). This is not critical to the issue but is of interest.

to the plaintiff, which took place on or about February 9, 1973, defendant was indebted to the plaintiff in the amount of Sixty Thousand and 00/100 ($60,000.00) Dollars. After a hearing before this court on October 4, 1973, on the motion, defendant's counsel conceded that there was no dispute as to the indebtedness of defendant to plaintiff prior to the return of the chairs in question. Discovery further produced an admission by the defendant that the chairs were worth about Ten Thousand ($10,000.00) Dollars.[2] Further, in the testimony from the deposition referred to in footnote 2, we find the following.[3]

The following testimony from the deposition of Mr. Hinds is that upon which defendant's counsel apparently basis his defense of accord and satisfaction:

(Testimony of Mr. Hinds referring to Mr. Ralph Droege, a salesman for the plaintiff at page 10, line 22, of the deposition.)

(Mr. Hinds): And then he [Mr. Droege] suggested the possibility of picking up the chairs and returning these to the factory and wiping out the debt completely; in other words, if I would release the chairs back to La-Z-Boy that I had, that he would talk to them at the plant and see that this debt was wiped out completely.

Q. Can you recall his exact words concerning the debt?

A. No, sir, I don't recall his exact words. I told him also, when he suggested that, I said, "Well, I hate to see La-Z-Boy or anybody lose that kind of money" and I said "It's never been my intention to beat anybody out of anything and I have always tried to handle accounts the way that I said that I would". In fact, your firm has collected for three accounts prior to this account in which I paid to you all everything that I said that I would do.

Q. Well, what did you understand him to mean when he said he would talk to them at the plant?

A. Well, he told me that he would see to it that the debt was wiped out.

Q. Well, how was he going about that Mr. Hinds?

A. I don't know that.

Q. He was the sales representative, which you understood, was he not?

A. Yes, sir.

Q. But he was not the credit manager nor an officer of La-Z-Boy Chair Company?

A. To my knowledge, he wasn't.

Assuming the testimony of Mr. Hinds to be true and viewing it most favorably to him, this activity, and such wording, followed by the return of the chairs, does not effect an accord and satisfaction under the laws of the State of South Carolina. The general and better rule seems to have been stated in 1 Corpus Juris Secundum, Accord and Satisfaction, Section 2 (page 467), as:

Indeed, it is now sometimes laid down as a general rule that it is essential to the making of a valid accord and satisfaction that there be a bona fide dispute or controversy between the parties, an actual and substantial difference of opinion, as to either the validity of the demand, the liability of the debtor, or the amount due from him, or at least that the claim or demand be unliquidated. Clearly this is true where the accord and satisfaction consists in the giving and acceptance of a less sum of money than claimed, nothing more, for in such case, as elsewhere appears in § 4 infra, the only consideration is the mutual concession of the parties.

2. From the deposition of Paul D. Hinds taken before Janet C. Blum, a Notary Public, July 31, 1973, at page 6, lines 11 and 12, we find the following:
   Q. What was the value of the ninety (90) chairs?
   A. Roughly, it was about $10,000.00.

3. Page 8 of the deposition: (lines 4 and 5)
   Q. But you do recall receiving a credit for the chairs?
   A. Yes sir.

Initially, this court finds there was no dispute as to the validity of any of the claims of the original demand, the liability of the debtor or the amount due. Defendant admitted that he originally owed a debt of approximately Sixty Thousand ($60,000.00) Dollars, for which he was given the credit of Ten Thousand ($10,000.00) Dollars upon return of the chairs. There was no difference of opinion as to the debt, either as to the validity of the debt, the liability of the debtor, or the original amount due from defendant to plaintiff, and the claim was for a liquidated amount because it was for goods sold and delivered, and there was no dispute about that. It is true that the South Carolina courts have not, by definition, directed as strongly or as broadly as the definition recited from Corpus Juris Secundum, but the inference from the decisions is that that is what is meant by the wording of such decisions. In Mixson v. Rossiter (1953), 223 S.C. 47, 74 S. E.2d 46, 48, where a manager-employee of a farm was given a payment check marked "full payment" which he endorsed, when in fact his contract had some months to go and more monies due, the court ruled that this was not an accord and satisfaction and stated:

This assignment of error is disposed of by the fact that the testimony discloses *no dispute* between the parties concerning the amount due, so as to furnish a basis for the application of the doctrine of accord and satisfaction.

The amount of the salary and other compensation which the respondent was to receive prior to his discharge is not a matter of dispute and was not involved in any of the discussions between the parties.

The application of the doctrine of *accord and satisfaction requires* the presence of two elements, to wit: the accord, consisting of the agreement between the parties *to settle a dispute;* and the satisfaction which consists of the payment of the considera-

tion expressed in the accord. Redmond v. Strange, 203 S.C. 35, 26 S.E. 2d 16; Reliance Varnish Co. v. Mullins Lumber Co., 213 S.C. 84, 48 S.E. 2d 653; 1 C.J.S. Accord and Satisfaction, § 1, pp. 462, 464. [Emphasis added]

South Carolina further ruled on the question in Dunaway v. United Insurance Company of America (1962), 239 S.C. 407, 123 S.E.2d 353, stating:

But the principal that a payment of a sum less than that claimed to be due does not constitute a satisfaction applies only to liquidated and undisputed debts. Here the testimony reveals a bona fide dispute as to whether respondent owed appellant anything under his claim.

The same impact, that is, the necessity of a bona fide dispute existing before an accord and satisfaction can be accomplished by payment is Whiting Stoker Co. v. Chicago Stoker Corp. (CCA 7, 1948), 171 F.2d 248, cert. den. 337 U.S. 915, 69 S.Ct. 1155, 93 L.Ed. 1725, which propounded:

Accord and satisfaction must be based upon a compromise in good faith of unliquidated or disputed demands where there is an honest difference between the parties as to the amount due. [p. 252]

Of this same impact is Eckert-Fair Construction Co. v. Capitol Steel and Iron Co. (CCA 5, 1949), 178 F.2d 338, cert. den., 339 U.S. 928, 70 S.Ct. 626, 94 L.Ed. 1349:

It is well settled that in order for the defense of accord and satisfaction to bar a recovery it must be shown that the amount paid and accepted was given in settlement of a disputed account. * * * Here, as revealed in its letter of July 21, 1948, defendant in tendering its check was clearly disputing plaintiff's right to recover for many of the items and amounts later set forth as an alleged indebtedness in the complaint. Manifestly, therefore, all of the claims and in-

voices sued on were in dispute as shown by the wording and content of the letter in which the check for $20,268.71 was transmitted.

In Fleming v. Post (CCA 2, 1944), 146 F.2d 441, 443, is authority for the proposition as follows:

A condition precedent to a valid accord and satisfaction is the establishment of a bona fide dispute over liability. The record would seem to reveal no 'actual and substantial difference of opinion' as to liability asserted and denied by the opposing parties.

Hogue v. National Automotive Parts Association (1949), (E.D.Mich.), 87 F. Supp. 816, 821, is the authority for the following:

A 'dispute' to invoke the doctrine of accord and satisfaction must be an honest, genuine, or bona fide dispute advanced in good faith and resting on a substantial basis, or founded on some reasonable tenable or plausible ground, and need not be in fact established or based upon solid foundation, but there must be some justification therefor and not a mere arbitrary refusal to pay. State, for Use of Warner Co. v. Massachusetts Bonding and Insurance Co., 1 Terr. 274, 9 A.2d 77, 80, 81.

And, again, a 'dispute' is a verbal controversy, a contest by opposing argument and expression of opposing views of claims; controversial discussion, debate.

In Peerless Hosiery Co., Inc. v. Northern Ins. Co., et al. (D.Conn.1952), 108 F.Supp. 52, 55, it is said:

There can be a valid accord and satisfaction only when there is a dispute as to the amount due.

Prior to the demand for the full $60,000.00 due, there was no *dispute* present in the case before this court.

Defendant positions before this court that the discussion in 1 American Juris Second, p. 333 [4], Accord and Satisfaction Section 35, controls here. He claims that the additional consideration for the accord and satisfaction or the contractual agreement which accord and satisfaction represents, was the burden or inconvenience to him of having to give back the chairs. This would be true, and perhaps apropos, if initially there were a dispute between the parties. Under the facts here, it does not appear the creditor gained anything for the fact that there was some claim burdened to the defendant, the debtor. It certainly does not appear in the record in this case.

Additionally, there was never any agreement, insofar as the record reveals, that the fact [if true] that the return of the chairs would burden (or break) defendant, was to be a part of the consideration. There was no meeting of the minds on the alleged contract of accord and satisfaction.

■ That there must be a meeting of the minds of the parties, in order to ef-

---

4. It was decided at an early date that payment of a lesser sum than the full amount of the debt, on the day the debt was due, accepted in satisfaction of the full amount of the debt, could not be satisfaction for the whole. This apparently was the beginning of the generally recognized rule that part payment of a liquidated debt accepted by the creditor in full payment does not constitute a valid accord and satisfaction of the unpaid balance. However, the rule has been much criticized and condemned, and many exceptions have been made. * * *

Whether or not the basis of the rule as it was originally adopted was lack of consider-

ation, it is evident that the theory of the rule as it obtains at the present time is *want of consideration for the discharge of* the residue of the debt, and if some consideration which is new and collateral to the partial payment *enters into the agreement*, it will, when executed, be upheld as a good accord and satisfaction. The collateral or additional consideration may consist of anything which would be a burden or inconvenience to the one party or of possible benefit to the other, the fact that it is insignificant or technical being immaterial [emphasis added].

fect an accord and satisfaction is soundly established under South Carolina law. As was said in the case of Reliance Varnish Company v. Mullins Lumber Co. (1948), 213 S.C. 84, 48 S.E.2d 653, 659:

> It is well established that "an 'accord and satisfaction' must contain the elements of contract, and there must be a meeting of the minds." Redmond v. Strange [1943], 203 S.C. 35, 26 S.E.2d 16.

The nebulous claim upon which defendant relies is obvious from the testimony of Hinds, emphasizing that there was no meeting of the minds: (p. 11 Tr.)

A. Well, he [Droege] told me that he would see to it that the debt was wiped out.

Q. Well, how was he going to do that, Mr. Hinds?

A. I don't know that.

Defendant admits that there is no agreement under seal, to import or imply consideration under Corbett v. Lucas and Dotterer (1827), 4 McCord 323, 15 S.C.L. 323, and argues that the necessity for a seal only exists where the partial payment is represented by money, citing Arnold v. Bailey (1885), 24 S.C. 493. This proposition is correct, but the case cited is one in which there was an assignment in writing, accepted in writing, and a meeting of the minds. The cases cited present the law, but not the law applicable to this case.

Finally, the quoted testimony of Mr. Hinds, upon which the defendant relies, clearly indicates that he knew that the man who talked to him about sending the chairs back was only a salesman. Of course, it was natural for the salesman to salvage what he could by getting a part-payment on the debt by the return of the chairs. Hinds admitted, as it is quoted in the record, supra, that he received a credit for the payment. Payment was only a partial payment, and nothing more. There was no accord and satisfaction.

This court has searched diligently for cases in the Fourth Circuit. So far, none have been cited to this court, nor have any appeared in the Digest.

For the reasons stated the motion for summary judgment is granted.

And it is so ordered.